IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01340-NRN

TRACY ALAN BARNETT,

Plaintiff,

v.

UNITED STATES OF AMERICA / FEDERAL BOP, et al,
DR. GEORGE SANTINI, Clinical Director (BOP - FCI Englewood),
HECTOR LOZANO, Asst. Hlth. Svc. Admin (BOP - FCI Englewood)
LARRY HUDSON, Health Svc. Admin (BOB - FCI Englewood)

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (Dkt. #54)
WITH RESPECT TO PLAINTIFF'S EIGHTH AMENDMENT CLAIM**

---

**N. Reid Neureiter
United States Magistrate Judge**

This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. #54), which was referred to the Court by Judge Daniel D. Domenico. (Dkt. #55.)[1] Plaintiff Tracy Alan Barnett filed a response and Defendants filed a reply. (Dkt. ## 69 & 70.) The Court heard oral argument from the parties on August 9, 2022. (See Dkt. #73.) The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that the Motion to Dismiss be **DENIED** with respect to Mr. Barnett's Eighth Amendment claim.

---

[1] This matter was reassigned to Judge Nina Y. Wang on August 5, 2022 after her appointment as district judge.

As explained more fully below, the Court is holding in abeyance the recommendation on Mr. Barnett's Federal Tort Claim Act ("FTCA") claim.

## BACKGROUND[2]

This lawsuit arises from Mr. Barnett's incarceration at Federal Correctional Institution ("FCI") Englewood. He alleges that, while in the Bureau of Prisons' ("BOP") custody, Defendants failed to provide timely cancer diagnosis and treatment, which allowed his cancer to grow and spread, to the point where it ultimately obstructed his digestive tract. He lost 55 pounds in the process and almost died. The following allegations are taken from Mr. Barnett's Amended Complaint (Dkt. #15) and all non-conclusory allegations are accepted as true.

Mr. Barnett began seeking medical treatment in January 2019 for "severe gut pain, chronic vomiting, and rapid weight loss." In January 2019, Mr. Barnett spoke with Hector Lozano and Larry Hudson, the Assistant Health Services Administrator and the Health Services Administrator, at FCI Englewood's "mainline" to discuss his symptoms. (*Id.* at 8.) They advised Mr. Barnett to sign up for a "sick-call." (*Id.*)

On February 1, 2019, Mr. Barnett had an appointment with Family Nurse Practitioner Birgit Dyer. Ms. Dyer informed him that he would have an appointment to see Dr. George Santini for a follow up review of the symptoms.

Over the next few weeks, several doctor's appointments were cancelled and rescheduled, but Mr. Barnett does not allege who cancelled the appointments. On February 21, 2019, Mr. Barnett had another appointment with Ms. Dyer, where he

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

complained of increasing pain in his abdomen. Ms. Dyer advised him to "drink water, take Ibuprofen, and walk the track." (*Id.*) However, she did not prescribe medication and Mr. Barnett was left to purchase it on his own from the commissary. Because Mr. Barnett was indigent, he could not afford to purchase the ibuprofen. Mr. Barnett states that, by the time of this appointment, he had lost nearly 19 pounds, falling from 208 to 189 pounds. (*Id.*)

On March 14, 2019, Mr. Barnett saw Dr. Robert King, who was filling in while Dr. Santini was on leave. Mr. Barnett requested to be put on a special diet of soft foods because he was unable to "keep down" food from the regular menu. Dr. King declined to order a diet change but recommended that Mr. Barnett take an antacid. Again, Dr. King did not prescribe the medication, and instead left Mr. Barnett to purchase it himself from the commissary. By this time, Mr. Barnett's weight had dropped to 173 pounds. (*Id.*)

On March 22, 2022, unnamed FCI Englewood health services personnel cancelled Mr. Barnett's first scheduled appointment with an outside gastrointestinal specialist. (*Id.*)

On March 28, 2019, Ms. Dyer submitted a request for an urgent GI consult. Mr. Barnett alleges that, despite the request for an urgent GI consult, no consults were conducted. (*Id.* at 9.)

On April 5, 2019, after several additional weeks of cancelled appointments, Mr. Barnett saw Dr. Santini. Mr. Barnett expressly told Dr. Santini that, due to the severity of his symptoms, he was concerned that he had stomach or bowel cancer. Mr. Barnett again requested a special diet and treatment for his ongoing abdominal pain. Dr. Santini

refused to order the diet change or provide any pain relief. By this time, Mr. Barnett had dropped to 168 pounds—50 pounds less than his original weight. (*Id.* at 8–9.)

On April 30, 2019, Mr. Barnett had another appointment with Ms. Dyer. By this time, his wight had fallen to 163 pounds. Again, he was left without pain medication.

On May 1, 2019, Dr. Santini requested a CT scan of Mr. Barnett's abdomen and pelvis. Mr. Barnett alleges that the CT scan was never conducted because the appointments with outside medical professionals were repeatedly cancelled. (*Id.* at 9.)

Mr. Barnett further alleges that through April and May 2019, he spoke to Mr. Lozano and Mr. Hudson to ask why he had not received appropriate medical treatment. He claims that they would take notes and announce that they would "look into" his issues. He also alleges that, in late May 2019, a correctional officer said, "Jesus Barnett, what's wrong with you? You look like you've got 'the cancer.'" (*Id.*) Thus, according to Mr. Barnett, even a layperson could correctly guess that he was suffering from a severe medical issue. During this same period, Mr. Barnett filed several grievances in an effort to have his medical needs addressed, but the responses he received indicated only that he had an appointment scheduled with an outside consultant in the near future. (*Id.* at 10.)

On June 7, 2019, Mr. Barnett had an additional appointment with Ms. Dyer for the same symptoms he had been complaining of since January. Ms. Dyer, who had just returned from leave, was "shocked" that Mr. Barnett still had not seen an outside consultant for medical testing. (*Id.*) By this time, his weight had dropped to 152 pounds.

On June 11, 2019, Ms. Dyer arranged for Mr. Barnett to be sent to a local emergency room after his appointment with an outside provider scheduled for that day.

4

(*Id.* at 10.) He claims that he was accurately diagnosed with "obvious bowel obstruction" within three hours of arriving at the emergency room. (*Id.* at 5.)

Two days later, on June 13, 2019, Mr. Barnett "had surgery to remove 'an advanced ileocolic neoplasm (large cancerous mass)' from his ascending colon, as it was 'completely obstructing' his large intestine." (*Id.*) A biopsy of the mass revealed that the cancer had progressed to an advanced state and "had metastasized by spreading to the lymph nodes." (*Id.*) It was classified as stage III colon cancer.

Mr. Barnett alleges that, but for medical staff's six-month delay in diagnosing his cancer, it would not have metastasized to his lymphatic system and he would not have needed chemotherapy treatments. He further alleges that, as a result of chemotherapy, he suffers from chronic neuropathy in his hands and feet.

Based on these allegations, Mr. Barnett asserts two claims: (1) deliberate indifference to a serious medical need in violation of the Eighth Amendment, and (2) medical negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.

Defendants moved to dismiss both claims. With respect to the Eighth Amendment claim, Defendants argue that Mr. Barnett has failed to plausibly allege a claim and Defendants are therefore entitled to qualified immunity. Defendants also argue that Mr. Barnett's FTCA claim must be dismissed because he failed to file a certificate of review, as required under Colorado law. Colo. Rev. Stat. § 13-20-602(1)(a). The certificate of review requirement applies to pro se parties, including pro se prisoners. *See Cestnik v. Fed. Bureau of Prisons,* 84 Fed. Appx. 51, 54 (10th Cir. 2003); *State v. Nieto,* 993 P.2d 493, 504 (Colo. 2000). *But see Gallivan v. United*

*States*, 943 F.3d 291 (6th Cir. 2019) (finding that the Federal Rules of Civil Procedure, and not state rules, applied in FTCA action, and that the Federal Rules do not require an affidavit to support an FTCA claim for medical negligence).

During the hearing on August 9, 2022, the Court granted Mr. Barnett until September 30, 2022 to obtain a certificate of review. The Court will therefore withhold issuing a recommendation on the FTCA claim until that date has come and gone.

## LEGAL STANDARDS

### I. Pro Se Standard

Mr. Barnett proceeds pro se. Accordingly, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). This standard "applies to all proceedings involving a *pro se* litigant, including… summary judgment proceedings." *Espinoza-Horiuchi v. Walmart Stores, Inc.*, 2016 WL 1275494 at *1 (D. Colo. Mar. 7, 2016) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). However, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Calbart v. Denver Sheriff Dep't*, 505 F. App'x 703, 705 (10th Cir. 2012). Mr. Woodley's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### II. Failure to State a Claim Upon Which Relief Can be Granted

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," he has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

### III. Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To determine resolve a government official's qualified immunity claims, a court must "The plaintiff must "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. A reviewing court has discretion to address either prong first. *Id.* at 236.

Raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, 744 F. App'x 542, 545-46 (10th Cir. 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). "At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for

7

objective legal reasonableness." *Id.* at 546 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Accordingly, to survive a motion to dismiss, a plaintiff "need 'only allege enough factual matter' to state a claim that is 'plausible on its face and provide fair notice to a defendant.'" *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

## ANALYSIS

### I. Deliberate Indifference to a Serious Medical Need

The crux of Mr. Barnett's claim is that the prison health administration Defendants, Lozano and Hudson, and the prison's medical doctor, Dr. Santini, inappropriately delayed his cancer diagnosis. Mr. Barnett alleges that Defendants knew of his deteriorating condition but repeatedly and unnecessarily delayed obviously necessary medical care, ignoring his pleas for further medical intervention.

Under the Eighth Amendment, prison officials can be liable for deliberate indifference to a serious medical need when "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). [3]

---

[3] Defendants argue that they are aware of no precedent holding that prison medical providers violate the law when they (1) advise an inmate to seek medical care or say that they will "look into" his complaints, in a context where the inmate indisputably received treatment, or (2) prescribe a course of treatment for an inmate, even if the inmate disagrees with the provider's medical judgment. The Court disagrees with this assertion. It is clearly established in the Tenth Circuit that delaying medical care may constitute an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *Kellum v. Mares*, 657 F. App'x 763, 768 (10th Cir. 2016). Here the disputed issue is whether the "treatment" provided was in any way meaningful, considering the extremely serious symptoms that Mr. Barnett was experiencing.

The test for liability of prison officials for deliberate indifference to an inmate's serious medical needs, in violation of the Eighth Amendment, involves both an objective and a subjective component. *Mata*, 427 F.3d at 751. A plaintiff must first make non-conclusory allegations that the deprivation at issue was in fact sufficiently serious. *Id*. A medical need is "sufficiently serious" if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that "even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Id.* (citing *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). In addition, a delay in a prisoner's medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. *Id*. The substantial harm requirement for a deliberate indifference claim may be satisfied by showing "lifelong handicap, permanent loss, or considerable pain." *Id*. (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong of the test for deliberate indifference to an inmate's serious medical needs requires the plaintiff to present evidence (or, at the motion to dismiss stage, non-conclusory allegations) of the prison official's culpable state of mind. *Id.* at 751. The subjective component is satisfied if the accused official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

9

exists, and she must also draw the inference. *Id.* A prison medical professional who serves as a "gatekeeper" for other medical personnel capable of treating a condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role. *Id.* at 757.

Deliberate indifference does not require a finding of express intent to harm. *Mata*, 427 F.3d at 752. Thus, a plaintiff alleging deliberate indifference to serious medical need not show (or allege) that a prison official acted or failed to act believing that harm actually would befall the inmate. It is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm. *Id*. This standard is akin to criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of serious harm. *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994)).

The standard for deliberate indifference to an inmate's serious medical needs lies somewhere "between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 752. The task of deciding on a motion to dismiss whether an alleged constellation of facts constitutes deliberate indifference is made more difficult because "contemporary standards and opinions of the medical profession also are highly relevant in determining what constitutes deliberate indifference to medical care." *Id.* at 757–58 (citing *Howell v. Evans*, 922 F.2d 712, 719, *vacated after settlement by* 931 F.2d 711 (11th Cir. 1991)). For example, in *Mata*, in the context of summary judgment, the Tenth Circuit relied on expert affidavits and a CDOC health care publication to conclude that there were issues of fact as to whether a nurse knew that severe chest pain posed a serious risk of health and the failure to act was reckless under acceptable

10

medical norms. *Id.* at 759; *see also Kellum*, 657 F. App'x at 766 (affirming denial of prison official's motion for summary judgment on question of qualified immunity, citing expert medical evidence that five-hour delay in getting obviously sick inmate to hospital substantially worsened the inmate's condition, ultimately requiring heart surgery).

The level of intent required for deliberate indifference to an inmate's serious medical needs can be demonstrated through circumstantial evidence. *Id.* "Whether a prison official had the requisite knowledge of a substantial risk to the inmate's health or safety is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. (quoting *Farmer*, 511 U.S. at 542).

**A. Mr. Barnett has adequately alleged the objective prong.**

The Court has no trouble finding that Mr. Barnett has adequately alleged that his "medical need was objectively sufficiently serious, and that defendants' delay in meeting that need caused him substantial harm." *Mata*, 427 F.3d at 752. Mr. Barnett's allegations, which the Court accepts as true at this stage, are that he was experiencing "severe gut pain, chronic vomiting, and rapid weight loss" for nearly six months without meaningful medical intervention. (*See* Dkt. #15 at 5.) Beyond the initial symptoms, Mr. Barnett was ultimately diagnosed with an obvious bowel obstruction caused by a large cancerous mass that had to be removed via emergency surgery. It was then discovered that the cancer had metastasized to his lymph nodes and required chemotherapy to treat. As a result of chemotherapy, Mr. Barnett now suffers neuropathy in his hands and feet. This is sufficiently serious to satisfy the objective prong. *See Mata*, 427 F.3d at 753

(concluding that a deliberate indifference plaintiff can satisfy the objective prong of the analysis either by alleging alarming symptoms that were ignored (severe chest pain) or by pointing to the ultimate harm suffered (heart attack and permanent heart damage)); *Sealock*, 218 F.3d at 1210 (explaining that because the Eighth Amendment forbids unnecessary and wanton infliction of pain, an inmate's severe chest pain, coupled with a failure to get him treatment for several hours, sufficiently established the objective prong of the deliberate indifference standard).

Defendants concede this issue, as they make no argument that Mr. Barnett's condition was not sufficiently serious or that he did not suffer substantial harm. (Dkt. #54 at 9 n.2 ("For purposes of this motion, Defendants do not argue about the objective prong.").)

**B. Mr. Barnett has adequately alleged the subjective prong.**

The Court next considers whether Mr. Barnett has sufficiently alleged Defendants' culpable states of mind. A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition. Even a brief delay may be unconstitutional. *Id.* at 755. Each Defendants' alleged knowledge and conduct must be analyzed. *See Mata*, 427 F.3d at 755–61 (analyzing separately the allegations of misconduct against various different prison nurses in deliberate indifference case).

"[T]he symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference." *Mallory v. Jones*, Case No. 10-cv-02564-CMA-KMT, 2011 WL 1750234, at *5 (D. Colo. May 3, 2011). "The question is: were the

12

symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009).

Defendants argue that medical staff did provide some medical care. For example, they note that Mr. Barnett's alleges that Defendants Lozano and Hudson indicated they would look into" Mr. Barnett's complaints and that Dr. Santini did provide some medical amounting to a "consistent, measured course of treatment." (Dkt. #54 at 11.) Defendants also make much of the fact that Mr. Barnett does not specifically allege who cancelled his various doctors' appointments, when the appointments were cancelled, and why. They also laud themselves that "[a]fter all, Barnett was scheduled for a CT scan and a consultation with a gastroenterologist by early June." (*Id.*)[4]

This misses the point.

Mr. Barnett's allegations are that in the face of his obviously serious symptoms, which included stomach pain, vomiting, inability to keep down food over a period of

---

[4] Defendants attach to their motion to dismiss several Clinical Encounter and Administrative notes and ask the Court to consider these documents. (*See* Dkt. ##54-1 through 54-10.) Generally, a court's review of the sufficiency of a plaintiff's claims is limited to the well-pled allegations of the complaint, accepted as true. However, the Court may consider the Clinical Encounter and Administrative notes if they are (1) "mentioned in the complaint," (2) "central" to the claims at issue, and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). Contrary to Defendants suggestion, the only medical record explicitly mentioned in the Amended Complaint is the March 21, 2019 health services report. (Dkt. #15 at 8.) However, the March 21, 2019 encounter is not attached as an exhibit to Defendants' motion, only the one from March 22, 2019 (which references a different encounter that took place on March 21) is attached. The Court will therefore not consider these documents. Even if the Court were to consider the documents, it would not change the outcome. The key issue is whether Defendants acted with deliberate indifference when presented with Mr. Barnett's apparent extreme condition. Because the Court lacks the necessary medical expertise and no expert testimony has been presented, a review of the Clinical Encounter and Administrative notes would not answer that question at this stage.

weeks, and rapid dramatic weight loss, Defendants failed in their gatekeeper role, failing to ensure Mr. Barnett's access to receive adequate medical care. Essentially, he complains that it should not have taken until June, six months after his initial complaint and after losing nearly a quarter of his bodyweight, for him to receive a CT scan and visit a specialist. Indeed, Mr. Barnett alleges that, because of the severity of his symptoms, he informed Dr. Santini that he believed he had stomach cancer. Mr. Barnett's condition was so grave that one of the prison guards commented that Mr. Barnett looked like he had cancer.

On a motion to dismiss, and reading the plausible allegations in the Amended Complaint in the light most favorable to Mr. Barnett, the Court (which lacks independent medical expertise and has no affidavits or expert reports from which to draw any conclusions) is in no position to find that Defendants' conduct does not, as a matter of law and fact, rise to the level of a constitutional violation.

It is not enough that the prison provided *some* medical care. As this Court recently discussed in *Tanner v. Campbell*, No. 21-cv-02340-CMA-NRN, 2022 WL 344897, at *10 (D. Colo. Feb. 4, 2022):

> If it were the standard that the provision of *some* medical care, no matter how inadequate, is enough to escape a deliberate indifference claim, then no civil rights complaint where a medical professional provided any response to a sick person would ever survive a motion to dismiss. This is not the law. For example, if an inmate were stabbed in the throat and had blood gushing from his jugular vein, merely providing a band-aid and telling the inmate to lie down and wait for the bleeding to stop would nevertheless constitute deliberate indifference because the presenting "medical symptoms and vital signs" would indicate a need for "emergency medical treatment." *Kellum*, 657 F. App'x at 770.

The Court concludes that the Amended Complaint plausibly alleges deliberate indifference to serious medical needs as to each Defendant. The allegations in this case

go beyond simply questioning a doctor's medical diagnosis and treatment modalities—Mr. Barnett, as a pro se inmate, has plausibly alleged that his symptoms were so obvious that even a lay person would understand the need for heightened medical intervention and diagnosis. Indeed, a non-medical prison employee told him he looked like he had "the cancer" because his appearance was so poor, but Defendants either ignored those symptoms or, recognizing that his symptoms required the attention of a specialist, failed to ensure that the Mr. Barnett was actually seen by a specialist. At base, Mr. Barnett essentially alleges that the medical team at FCI Englewood utterly failed in the gatekeeper function (as recognized by Ms. Dyer, who was "shocked" to learn that he had not yet been seen by a specialize, when she returned to work after some time off). Mr. Barnett's allegations paint a picture of a group of prison employees who failed in providing basic medical care to a seriously ill inmate that they knew or should have known was required. That group, while able to provide some level of treatment and basic care at FCI Englewood, served as gatekeepers for the higher level of specialized care that Mr. Barnett allegedly clearly required but was delayed in receiving. *See Sealock*, 218 F.3d at 1211.

Defendants Lozano and Hudson initially told Mr. Barnett to enter a sick call, which he did. However, throughout the months of April and May, Mr. Barnett asked these Defendants, the Assistant Health Services Administrator and Health Services Administrator, respectively, why he was not receiving adequate treatment and medication. Their response was that they would "look into it." And, contrary to Defendants' suggestion (Dkt. #54 at 10–11), there *are* allegations that Hudson and Lozano did not follow through on their promise. (*See* Dkt. #15 at 9 (after complaining of

15

his inadequate medical treatment, "neither Mr. Lozano, nor Mr. Hudson, did anything to further Plaintiff's medical treatment").)

Defendants argue that Mr. Barnett does not allege Lozano and Hudson could have provided medical care or diagnosed him, so his claim against them should fail. But Mr. Barnett specifically alleges that their experience and training as health service administrators "should have clearly alerted them to Plaintiff's serious medical deterioration and medical needs." (Dkt. #15 at 10.) It is irrelevant that Lozano and Hudson would not have actually provided the medical care are diagnosis. Defendants Lozano and Hudson are gatekeepers with the ability and obligation to assist Mr. Barnett in receiving appropriate medical care, but they failed to do so. The Court finds that, at this stage, Mr. Barnett has plausibly alleged a deliberate indifference claim against these Defendants. *See Kneen v. Zavaras,* 885 F. Supp. 2d 1055, 1061 (D. Colo. 2012) (denying motion to dismiss Eighth Amendment claim against prison health administrator responsible for ensuring that inmates receive adequate healthcare where administrator knew the prisoner faced substantial risk of harm and disregarded that risk). Development of the factual record may reveal that Defendants Lozano and Hudson did indeed follow up and attempt to secure medical treatment for Mr. Barnett, in which case the claims against them can be dealt with on summary judgment.

Dr. Santini treated Mr. Barnett once on April 15, 2019. By this time, Mr. Barnett had already lost significant weight during a short period of time. Presumably, there should have also been an indication that Ms. Dyer had requested an urgent GI consult on March 28, 2019. At this appointment with Dr. Santini, Mr. Barnett expressed his fear that he might have bowel or stomach cancer, but Dr. Santini diagnosed him with

16

gastrointestinal reflux disease and provided Mr. Barnett with heartburn medication. Defendants argue that this merely constitutes a misdiagnosis, which cannot give rise to an Eighth Amendment claim. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("[A]ccidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute *a* medical wrong under the Eighth Amendment") (internal citations omitted). But Mr. Barnett's claim is that his symptoms were so obvious, and his situation so dire, that he was "withering" away and even a lay person would recognize he needed more serious medical intervention, so a medical professional should have known that Mr. Barnett required more sophisticated medical care than what the prison could provide. In essence, Dr. Santini should have known that Mr. Barnett was suffering from a serious medical issue that required outside consultation, but failed to ensure that he received timely diagnosis and treatment from a specialist. Further factual development may reveal that Dr. Santini acted pursuant to acceptable medical norms or did in fact act to ensure that Mr. Barnett saw a specialist, but the Court cannot make the finding at this point in the litigation that this was but a misdiagnosis or "mere negligence" as opposed to recklessness on the part of Dr. Santini.

Defendants are gatekeepers who delayed or denied Mr. Barnett's access to appropriate medical intervention. As the Tenth Circuit explained in *Sealock* with regard to the gatekeeper function,

> The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment. *See Ramos*, 639 F.2d at 575. Ordinarily, a medical professional will not be liable for this second kind of deliberate indifference, because he is the person who provides the treatment. If, however, the medical professional knows that his

17

> role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.

*Id.* In *Sealock*, a claim of deliberate indifference was made against a physician assistant who, in the face of an inmate's non-explained chest pains of which the physician assistant was aware, allegedly failed to promptly send the suffering inmate to the hospital. The inmate was later diagnosed as having had a heart attack. On summary judgment, the Tenth Circuit agreed that the *Sealock* factual scenario adequately stated a claim for deliberate indifference. "[The physician's assistant] knew that unexplained chest pain posed a serious risk to appellant's health. Failure to summon an ambulance would have disregarded that risk, arguably constituting deliberate indifference to a serious medical need." *Id.* 1211–12.

Importantly, *Sealock* was decided on a motion for summary judgment. In this case, we are only at the motion to dismiss stage where all of Mr. Barnett's allegations are deemed true and Defendants' task in obtaining dismissal is even greater. *See Peterson*, 371 F.3d at 1201 (asserting qualified immunity defense via Rule 12(b)(6) motion subjects the defendant to more challenging standard of review than would apply on summary judgment). Construing Mr. Barnett's pro se complaint liberally and in the light most favorable to him, the Court finds that Mr. Barnett has plausibly alleged violation of a constitutional right, and that the right was clearly established. As such, at this early stage in litigation, Defendants are not entitled to qualified immunity, and this case should proceed on Mr. Barnett's deliberate indifference claim.

## RECOMMENDATION

In light of the foregoing, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. #54) be **DENIED** with respect to Mr. Barnett's Eighth Amendment deliberate indifference claim. In light of Mr. Barnett's extension until September 30, 2022 to obtain a certificate of review pursuant to Colo. Rev. Stat. § 13-20-602(1)(a), the Court withholds its recommendation on Mr. Barnett's FTCA claim until a later date.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Date: August 22, 2022

                                         _____
                                         N. Reid Neureiter
                                         United States Magistrate Judge